and I'm impressed at how many people are still with us. 22-1207. Mr. Francis, is that right? You reserve three minutes? Yes, Your Honor. May it please the court, my name is Jonathan Francis. I'm an AUSA in the District of Connecticut and I was one of the prosecutors in this case below. The District Court erred in two ways. First, there was no discovery violation by the government. And second, even if there had been, preclusion of the video that's at issue was an abuse of its discretion. As I understand it, May 24th of 2002 is when the government actually got possession, control, whatever the three words are, all of those. And the following day, the copy was turned over to the defendant. Correct. 2022, yes. May 24th, 2022. The next day. Correct. Within 24 hours, the government turned over the video, which is Government Exhibit 120C. We turned that over. And you didn't have, the government did not have possession, custody, or control prior to May 24th? No, we did not. And that's what Rule 16 of the standing order. I guess my question is, isn't that, if that's true, do you, you can have as many arguments as you want, but do you need another argument if that's true? No, the government does not need any other argument. And in fact, the government's position is the court's analysis should begin and end with the text of Rule 16 and the standing order, both of which are limited to materials within the government's possession, custody, and control. There's no dispute between the parties. The district court found, this is at page 506 of the record, that the video, this is on June 2nd, 2022, the date of the preclusion order. The district court found that the video had surfaced just prior, the district court actually said just prior or just after, but it was just prior to the pretrial conference. The pretrial conference happened on May 25th. The purposes of Rule 16 and the standing order are to put all the parties on a level playing field when it comes to trial preparation. And that's what the government did here, because within weeks of arraignment, the government turned over the evidence that it, the materials that it had at that point regarding this video. Two pieces of, two materials in particular. One was an interview memorandum from January of 2020 of the videographers that were hired by one of the defendants, in which they said, we have two hours of video. That same day, in response to that statement, they received a grand jury subpoena. And in response to that grand jury subpoena, the very next day, they turned over a 13-minute video. Now, within weeks of the arraignment, the defendants had both those things. The interview memorandum. No, I was just going to ask, it seems to me I've seen reference here to an unedited one, longer, much longer than 30 minutes. Was there also a tape much, that was an uncut tape of raw footage of the entire matter? No, Your Honor, not that anyone is aware of. At this point. So they were incorrect, either the records are incorrect or the witnesses testifying that there was a two-hour video were incorrect. Is that the government's position? Yes. Either the videographers were wrong when they said we have two hours of footage in January of 2020. I don't know, maybe they were thinking we were there for two hours or I don't know what. We got paid for two hours. I'm not sure what they were thinking. But either they were wrong about that or they had, maybe they still have it, although at this point it's hard to believe, or at some point they had it and then something happened to the other hour. You never saw it. I'm sorry? You never saw it. The government never saw it. No. Government's exhibit 120C is 28 minutes. That is the most video we have seen so far. Okay, what do I make of Matthews? So the part where the obviously if we could end it at in the hands of a person who is not the government. What do we do about the and the government has no reason to suspect the evidence exists. I think what this comes down to is how much that recitation of the two hours gave the government reason to believe that it exists and reason to believe that somebody was being noncompliant with the subpoenas that they were being given to turn things over. Right. So I think there are two parts to that question. Let me deal with the what do we make of Matthews first? Matthews has this sort of what the government believes to be extra language, but even the facts of Matthews. In Matthews there was a love letter from one of the government's witnesses. The Rule 16 violation wasn't that the fact that the government never asked its own witness, gee, do you have any love letters to support your claim that you were in a relationship with the defendant? The Rule 16 violation in Matthews was that once the government got it, the prosecutor held on to it until the until later and then turned it over. And so even Matthews doesn't turn on that extra language. And there are no cases in the Second Circuit. So you think that that's either you think it's either imprecise language or dicta is what you're the part that would. Obligate you to or would trigger your and you knew of it obligations, whatever they were, you think is an overread of Matthews. I do. I think it is dicta. I think it was it was an enthusiastic way of showing when something is not in the government's possession, custody and control. Oftentimes that's because we don't even know about or you don't even have reason to believe it exists. But clearly, there are plenty of instances in which the government is aware that other materials could exist. I point the court to ROM and Rubirosa, both of which are unpublished, non-presidential. But in those cases, it was bank records and telephone records. In every case or in many cases, I should say, the government could, by grand jury subpoena, get bank records and telephone records. But that doesn't mean there's something wrong with waiting and getting a trial subpoena that's returnable on the first day of the trial. If that were. And so in those instances, no one, this court in a non-presidential way, did not hold it against the government or find a rule 16 violation. And that's consistent with the text of the rule and the order. I have some more questions. I'm going to keep you behind your time. Can we talk about the standing order? It says that the district court may impose certain rectifications or failure to comply. The district court has good cause. Yes. Isn't the district court in a better position than us to know what constitutes good cause? Sure. But there has to be a violation first. And that's where there's there's a disconnect or the district court erred. So you're saying that the that there's no daylight between Rule 16 and the standing order as to the government's obligations. Actually, I believe. Okay. So why don't you want to put words in your mouth? Tell me what you think. Yeah, I think this is maybe hyper technical, but I think it is. It is a true thing. And so I'll say Rule 16 doesn't have a diligence obligation, whereas the standing order with respect to these materials does. And so in that way and that diligence obligation only applies to materials within the diligence. Remind me diligence to do what turnover materials that are within the way the standing order reads. I'll paraphrase is the government has to turn over materials that are within the government's possession, custody or control that are known to the prosecutor or could through the exercise of diligence be known. So it's known or should be known to the prosecutor. And so that's actually a restriction in some ways on what Rule 16 requires. Rule 16 doesn't have that. And so under the standing order, the universe of information is everything within the government's possession, custody and control. And then there's a limitation on that to things that are either known or should be known to the prosecutor. So under the standing order, it's possible. So it's possible that the government has a different office. But this prosecutor doesn't know that. Yes, the standing order would permit that. I'm not sure Rule 16 has its own analysis. I believe the prosecution team, the definition of the prosecution team for those purposes would be used to apply here. This is a distinction without a difference as applied to this case because the parties agree there's no dispute. This video did not come into the government's possession until the day before the pre-trial. But what about the know or should be known given the two hours? Right. I mean, I think that's the question. Is that when you knew that somebody said rightly or wrongly that there was a two hour video and you never got a two hour video, does either Rule 16 or the standing order obligate you to say, hey, what about this two hour video you guys mentioned? Right. So this actually, I think, is the second part of your earlier question. And thank you for bringing me back to it. Under these circumstances, if the order was reversed, if we had given them a subpoena, they had given us 13 minutes. The videographers had given the government 13 minutes. And then they had said we have two hours of raw footage. One might understand the government to have not been diligent. Now, this all presupposes that Rule 16 requires the government to be diligent with the production of information from third parties, which it does not. And the court can end its analysis there. But if you were to, for the first time and in contravention of all prior holdings, decide the government is responsible for the diligence with respect to third party materials, then the question of, well, okay, was the government diligent here? The order, however, is not reversed. What happened was they said we have two hours of footage and they received a grand jury subpoena. In response to that subpoena, and the grand jury subpoena was for all recordings, the very next day they turned over 13 minutes. That 13 minutes was called raw footage. That was part of the title of it. They also turned over a certificate of records compliant with federal rule of evidence. So you're saying almost on the spot people realized the two-hour thing must have been a mistake, right? That was what the government thought in its investigation. The certificate of records described in the videographer's own handwriting described what they turned over, footage of the event at this restaurant on that particular date. So the district court seemed to be a little frustrated with the government during this process where there was lots of stuff happening and it kept happening. Do we have to be in Rule 16 land or in the standing order land? What about the district court's inherent authority to keep their docket and to keep their trial moving along and to be able to control their schedule? Because this was not the first time the district court, or at least as I read the record, the district court had to think creatively about a last-minute surprise on the part of the government. So I think I would take issue with that factually. Okay, so let's break it up. Yes. Okay. Do you disagree that what would be your position on whether or not the district court, just under their inherent authority to manage their own docket and to keep their trials moving, could have taken this response not relying on Rule 16, not relying on the standing order? The court is without that authority. Unless there's been a violation of a rule of evidence, a rule of criminal procedure, or the standing order, or this court's precedent, the court doesn't have the inherent authority to just preclude evidence. But a district court can say you're only getting two days for trial instead of eight days for trial. You are, you know, we're having the hearing on this date, not on this date, right? So where is the line between saying, you know what, this one is just a pylon, and it's not going to be helpful, and it's going to be disruptive, and it's going to cause delay, and something that you would not dispute that they have to, right? You're not going to dispute that they can set how much time for trial. Of course not. And you're not going to dispute that they could set the trial, even if it doesn't give you enough time, even if it doesn't give the government or anybody else the time that they would like to prepare, right? Correct. So where is the line between what they did, saying this one is not coming in except for A, B, and C reasons, and the inherent authority that you agree is appropriate? So if the district court had said, for instance, you only have seven trial days or five trial days or whatever, it would be for the government to decide what evidence goes in those five trial days. I believe there's a separation of powers issue that's been recognized by other circuits with the district court trying to climb inside the government's case and pick and choose evidence when there has been no legal reason to preclude it. And so that's the situation. And to be very clear, that is not what the district court did. What the district court did on June 2nd was it cited its authority under Rule 16 for precluding a piece of evidence in response to a defendant's motion, the defendant's motion, to preclude under Rule 16 in the standing order. There are many instances in which the government would have had lots to say. For instance, later on, a month later, after the notice of appeal was filed, the district court – I'm way over my time. It's our time. And I need you to answer these questions. Thank you. So a month later, on July 1st, after the notice of appeal has been filed, the district court files its written ruling in which – or produces its written ruling in which it, for the first time, found a Rule 16 violation. For the first time, found – cited the standing order. For the first time, found a 403 violation, which sounded a lot like what Your Honor was saying about, oh, this will be confusing or this will be disruptive. The 403 analysis is inappropriate to be conducted pretrial, as this Court's rulings have said. And in any event, even if it were a duplicative piece of evidence, it's for the government to decide which of two duplicative pieces of evidence to choose. And the district court also cited Rule 611. And Rule 611, had it put this to the parties, the government would have been happy to inform it or point to the case law saying that Rule 611 is not a grounds for preclusion whatsoever. And so maybe this happened kind of quickly. To some extent, that can be related to the view of the defendants who had the video for a week and chose to wait until the second day of jury selection to make a motion to preclude. The government put it on its exhibit list on May 26th, so the day after we turned it over. We put it on our exhibit list. Two days after you received it. I'm sorry? Two days after you received it. Yes. And to be hyper-technical about it, we didn't even receive the video until the evening of the 24th. The prosecution team, we didn't even know about it until we were in the pretrial conference on the 25th. We put the fact of it on the record and we told the court we were going to be using it in our case in chief. We produced it that day. We turned it over to the defendants the next day. Or rather, we put it on our exhibit list the next day. And then they waited until they teased the idea that they might make a motion on May 31st with the district court. And they didn't make their motion orally until June 1st. June 2nd, the district court, at the government's request, there was a continuance granted so the jury selection could pause. June 2nd, the district court precluded it. The government asked for another continuance because the jury was due to be sworn in the very next morning. So we wanted a continuance until June 6th, which would have given us over the weekend. And we asked the court to watch the video so you could understand, so the court could understand how it fit in. But then also, in the hopes that we would have time to make a motion of reconsideration, the district court denied us that continuance. And so we had less than 24 hours, the government did, to decide whether or not to move to appeal. Because we waited for the jury to be sworn in, jeopardy would attach, and this court would be without jurisdiction under 3731. I reserve time. Thank you very much for your patience. I take it 3731, which I haven't seen as many cases as I would think, is your opportunity to sit on that side. Yes. Exactly. It's a very unusual situation where I actually have time for rebuttal. Thank you, Your Honors. And you needn't worry. We'll keep you as long as we need you. So you're not going to be prejudiced by the extra ten minutes. Thank you, Your Honors. And I think that I was benefited as well from the extra time and the questions. My name is Alexander Talbis. And in this appeal, I represent Dennis Bradley, who is in attendance today behind me, as well as his father, Dennis Bradley Sr., an 11-year U.S. Army veteran. The district court was well within its— That's not terribly relevant to what we're doing here. I believe that this case raises very important questions, Your Honor, about what the public, not just defendants, what the public can expect from its court system and its prosecutors in regard to what the court sets down as deadlines, as trial dates, as exhibit list dates, as well as for speedy trials, as well as the ability to rely upon the word of the U.S. attorneys who prosecute cases in this court. Okay. So can you tell me how you think the district court's order was, to use your word, tentative? I believe that the district court's order was tentative because I believe reading the district court's order, particularly the oral soliloquy between the government and the trial court, makes it, in my view, pretty clear that barring unforeseen circumstances, in a variety, in a multitude of circumstances, the video is going to come in. Okay. So that makes it conditional, right, not tentative. And conditional is something that can be appealed, right? And so you didn't argue conditional. You used the word tentative because you're trying to suggest that it wasn't final. So can you explain that, please? I believe that rather than it being conditional, because I think, as the government argued, it wasn't really conditional. It was in effect. The ruling was in effect without any conditions. There was a condition that could be met to allow for the admission of the evidence, but I really see it more as a qualification of preclusion rather than a condition. But why isn't it final, then? Well, the first reason I would say it's not final, Your Honor, is because at three points in the record, at 507, 508 to 509, as well as at 515 to 516, the trial court says, send me the videos. I'm going to need to actually see both versions, and I may get smarter about it if I see it. Remember, this is a case about a party. The case is about a party, March 15, 2018. So this evidence, evidenced by the government's appeal in this case, is what the government believes is a smoking gun. And the district court was concerned with a game of gotcha on all of the witnesses who were going to testify. How does that help you? If the judge was concerned about a game of gotcha, then why wasn't that a final ruling limiting when it can come in? Because what the district court wanted was for the witnesses to be able to testify truthfully without having the government make this the centerpiece of its opening statement and the centerpiece of its case. The district court made very clear, however, that if anyone testified contrary to the video or if anyone made any contention that could be refuted by the video, the video is going to come in. Let me ask a different question. If we don't have jurisdiction right now, in the defendant's view, I'm sorry, in your client's view, when could the government appeal this? In my view, the government could have done a lot more. First of all, as they said at 521, we can certainly provide the videos. We're across the street. We can do that shortly. That's not the question I asked. I asked when could they appeal it? I believe that they could have appealed after providing the videos to the judge and asking the judge, having seen the videos, is it final we will not be allowed to introduce these videos into evidence? And had the judge not expounded any further and all we were left with is what we have now in this record, I think it would have saved it. So basically you're saying that the district court judge needed to say something like, no, I mean it. I'm not even willing to consider anything else. This is real, real, real, real, real final. I mean, I don't quite understand. They had the colloquy back and forth. And they clarified what it was on the record and then they appealed. Well, the ruling itself does in the wording that the court used when it said not only could the door be opened, but that something that allows for its introduction because the video is at issue. It would appear to me that the court is really not precluding the evidence that is portrayed in that video because in any situation in which the facts portrayed in that video are not getting into the record or getting into the trial, the judge is going to be allowing it either in the case in chief or as part of a rebuttal case. OK, so maybe I'll change gears. How are you asking this court to read a due diligence requirement in 16A1E? At least within the local standing rule, Your Honor. OK, so you're not for Rule 16, but you are for the standing rule. We think that it would be consistent and correct to see a due diligence requirement. I can't give you the best case that says that there is a due diligence requirement. I do believe that we do such. So we would need to create new law to say that there is a due diligence requirement in 16A1E. Is that your view? I think that the government's actions in this case do present a new set of factual circumstances that this court has never ruled on. So no matter what this court rules, it will be making new law, whether it rules against us and it allows the government to do things that it previously has never done. How should we avoid Rule 16 when there are some provisions that do have a due diligence requirement and A1E does not? From an interpretation perspective, shouldn't the negative inference be that there's not a due diligence requirement in 16A1E? I don't necessarily think so. I'm just going to pull my reading of the text with me. And the reason why I believe that you could believe that there's due diligence required in both, even though due diligence is only expressly included in one, is because it makes more sense to write due diligence expressly in the, in one rather than in the other, because necessarily when it's recordings of the defendant and it's not the government, there's going to have to be some due diligence. Okay, if you, if you think, if there, let's just say, because you're not, you're not conceding that, but let's just say that we believe, or one, that this court reads there not to be a due diligence requirement in 16A1E. And I just heard you say you disagree with that. Wouldn't you say, or what would be your position on what, what rules as between a difference between the federal rules and the standing order? Well, I believe that a district court does have the ability to impose some additional obligations on the government in discovery beyond what the federal rule requires of the government in every court across the country. And that, I think, goes with both the inherent power of the court and both Rule 2 of the Federal Rule of Criminal Procedure requiring the courts, the rules to be interpreted for the just, speedy, and inexpensive resolution of the matter, as well as 57B, which allows the courts to impose certain sanctions when a party is on notice of a requirement and fails to fulfill it. Would you say interviewed the Jacksons again on the 24th suggests that they were at least being diligent to figure out once and for all whether or not there was, in fact, another video? Absolutely not, Your Honor. Okay. Would it be your position that they were obligated to prosecute a failure to comply with a discovery request or a subpoena for the data? I mean, we can argue about whether or not it was smart strategy on the part of the government to let that thread go undealt with, but what were they supposed to do? They looked at the form, they looked at the video, and they interviewed them later just to be sure. Did they have to say, no, we don't believe you because there is an offhanded reference to a two-hour video and we are going to haul you into court? What were they obligated to do to satisfy their requirement? Well, at very least, they could have asked a simple follow-up question. This is what you gave us? Is this all? They did on the 24th, right? That was over a week after the court set a deadline. So your dispute is not what they did, it's when they did it? Well, absolutely. The government's delay in seeking this evidence until after the deadline for exhibits had passed and the trial court had already required a joint trial memorandum with an exhibit list. And the government says the day after they handed it over it's in an exhibit list. I did not see that in the record. The only exhibit list in the record I see with this exhibit on it was filed May 31st. A week after they received it. So a lot of time has passed now because they've appealed it. And we're in the predicament that we're in. Are you still going to argue that your clients are prejudiced by the introduction of it? Because you certainly have had plenty of time now to think about how this changes your strategy. Well, Your Honor, if a long appeal by the government cures prejudice from a late disclosure, the government has a free end around of any time something is late disclosed and causes substantial prejudice on a defendant. Right, but the question, I mean, nobody's, this is the first I've heard you argue about a late disclosure because nobody's disputing that when they got it they turned it over. The question is whether or not they were diligent enough in not getting it earlier, right? So that's not the argument here. My question is, is now, is your client going to be prejudiced? Yes, my client will be prejudiced because this will require him to completely redo his entire trial preparation at great expense. At enormous expense. And not only that, but by simply taking an appeal, but not only that, this defendant has been prejudiced and continues to be prejudiced by how long these proceedings are ongoing. And so there's prejudice there. But in any event, Your Honor, the question of whether the prejudice has been cured at this point could not possibly be a reason that the trial court erred. That would be a question for the trial court on remand to determine. The trial court could not have erred in failing to predict that this appeal will take a long time and will cure the prejudice, so we might as well let it back in. That's not really an issue that's properly before this Court, whether or not the defendant will still be prejudiced upon remand. So I would argue that this Court need not and probably should not answer that question. But yes, we will be arguing on remand that the defendant still is prejudiced. Recognize that this video now, which unfortunately is not in the record, and the appellant bears the burden of presenting a full record on appeal, this video shows like over 100 people in it, Your Honor. The prior video of 13 minutes does not show nearly as many people. It's 28 minutes, right? It's 28 minutes. It's very boring. It's just a party, you know, a rubber chicken dinner of people. No, but like, I mean, it's a lot of, I mean, you're arguing a lot of prejudice from an extra 15 minutes that you just conceded was boring and didn't, you know, was about rubber chickens. But, okay. But it was used to reinterview, the government used it to reinterview all of its witnesses and completely revamped its witnesses. And, Your Honor, you asked a question of the government earlier, which I don't think we got a real answer on, which is, was this just one of many surprises that ambushed the trial judge immediately before the trial? And it was. As was noted at GA-405, within the past 30 days prior to that, the government had disclosed over 3,000 pages of documents. At 339, the government conceded that some of the testimony it was offering was expert testimony and that, quote, we would exclude that. But then they argue at 353 to 354, the remedy is not the exclusion of their witnesses. The typical remedy is additional time. When there's no bad faith, the remedy is additional time. So as you can see, with multiple surprises and failures to prepare and failures to comply with court deadlines and court orders on the docket, such as exhibit list deadlines, the government's answer is always, give us more time. It doesn't cost the government anything, but it costs my client dearly for his sixth trial date in this court to not be a real trial date, after seven continuances, not one with a signed speedy trial waiver. If the court has any further questions for me, I'm happy to answer them. But seeing none, thank you very much for your time and consideration of what we believe is a very important matter of government accountability. Your Honors, so to address the question of jurisdiction, to some extent, I believe this has been rendered academic, because the district court's July 1st written order or written memorandum said that he was precluding a trial date. Precluding government's exhibit 120C. And this is factually incorrect to say that there was anything tentative about this ruling. The government twice clarified it. With respect to whether or not this sent me the videos, which is what the district court said on June 2nd, the government submitted the videos to the clerk, or submitted 120C, along with all its exhibits and its final exhibit list, as ordered on May 31st. That was based on the district court's order weeks prior to that, the copies of exhibits and final exhibit list. The May 26th exhibit list that I referred to, the parties were exchanging interim sort of draft exhibit lists along the way in an attempt to meet and confer on trial objections. And so there was no, the government didn't miss any of its deadlines. We were on time with every single step. The 3,000 pages that we turned over, that was not things that were exhibits at trial that we were pulling out at the last minute. This was us meeting our continuing obligations under Rule 16, the standing order, Brady, Jackson, Giglio, all our discovery obligations to make available. If you do them, if you don't, you don't turn them over. If you do turn them over, you're surprising them, and it's bad. That's right, but I'd much rather be in the situation I'm in now, in which I can say the government met all its constitutional and rule discovery obligations by turning that information over. With respect to whether or not there's a diligence requirement under A1E as opposed to A1A of Rule 16, A1A is about oral statements made by a defendant to someone they know once they're in custody, to someone they know to be a government agent. Now, in those instances, obviously, the government knows or has possession, custody, and control, and so then it's a question of does the trial team know or have reason to know. To be very clear, there is no case that the defendants can point to, and there is no reading of Rule 16 or the standing order that apply a diligence requirement with respect to third parties. The diligence requirement modifies government's possession, custody, and control. It is when it's used, it limits things that have to be turned over to things within the government's possession, custody, and control that are known or should be known. I see my time is up. There's just one more thing I'd like to address. Fine. Thank you. With respect to the May 2nd, 2022 letter from defense counsel that's at the record at page 500, what the defense asked was not are you sure the videographers have turned everything over. What the defendants asked was has the government turned over all versions or all the footage in its possession, custody, and control, to which we said yes. And in response, the defendants did not seek a trial subpoena, which they were free to do. And, in fact, since Mr. Bradley, the defendant Bradley, was the one who hired these videographers, he was in the best position to know whether or not the videographers had their cameras on or he had paid for more footage or whether at some prior point he had seen something more. And even in that instance, they chose not to seek a trial subpoena of additional footage. The government, in a worse factual position, but with the same as with respect to what happened back in 2018 at the party, but with the same information, had no reason to think that there was additional video that was being withheld by these subpoena recipients. There's no further questions. The government's response is brief. And I ask your Honors to reverse to the district court. Thank you. Then we have Israel Schrimmer and Miriam Schrimmer v. Peter Hill et al., 222851.